**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____

KOFI BAYETE,

          Plaintiff,

      v.

MICHELLE RICCI, Administrator of New
Jersey State Prison; DONALD MEE,
Associate Administrator of New Jersey State
Prison; and ALLAN MARTIN,

          Defendants.

_____

Civil Action No. 08-3941 (GEB)

**MEMORANDUM OPINION**

**BROWN, Chief Judge**

      This matter comes before the Court upon defendants Michelle Ricci's and Donald Mee's (collectively "Defendants") Motions to Dismiss and for Summary Judgment. (Docket Entry No. 22-2.) The Court has reviewed the parties' submissions and decided the motions without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons that follow, the Court will grant in part and deny in part Defendants' Motion to Dismiss and deny Defendants' Motion for Summary Judgment without prejudice.

### I.    BACKGROUND

      Plaintiff Kofi Bayete ("Plaintiff"), an inmate of the New Jersey State Prison ("the prison") brings this action against Defendants Ricci and Mee, the administrator and associate administrator, respectively, of the prison. (Docket Entry No. 22-3 at ¶ 1; Docket Entry No. 1 at ¶¶ 5-6.) Plaintiff's

1

claim stems from a series of events occurring in August 2006, during which time he developed cellulitis.  (See generally Docket Entry No. 1.)  Plaintiff claims he developed this condition due to Defendants' failure to provide adequate medical treatment, and he argues that this failure constitutes deliberate indifference to his medical needs, cruel and unusual punishment, and atypical and significant hardship in violation of his rights under federal and state law.  (Id. at ¶ 15-20.)

According to the complaint, on or about August 7, 2006,[1] Defendant Ricci ordered a lockdown of the prison, resulting in the confinement of all inmates to their cells for 24 hours a day. (Id. at ¶ 10.)  As part of the policy of the lockdown, Defendants suspended all inmate appointments for and access to normal primary physician care at the prison medical clinic.  (Docket Entry No. 30 at 17.)

The day after Defendant Ricci ordered the lockdown, Plaintiff noticed "a redness and swelling" on the bottom of his left foot.  (Docket Entry No. 1 at ¶ 11.)  While the timeline subsequent to the ordering of the lockdown is somewhat muddled,[2] Plaintiff alleges that from the day he first noticed the "redness and swelling" on his foot, until the day prison staff took him to the hospital, he suffered "increasing pain and swelling."  (Id.)  Moreover, Plaintiff states he repeatedly

---

[1]The dates of events in Plaintiff's pleadings are at times not specific and, the Court notes, at times they are contradictory.  However, consistent with liberal pleading standards and the lenient treatment for pro se complaints set forth in Haines v. Kerner, 404 U.S. 519, 520 (1972), the Court construes Plaintiff's complaint in the most favorable light possible.

[2]For example, Plaintiff's Complaint (Docket Entry No. 1) contradicts his Certification (Docket Entry No. 30 at 16-19).  In the former (id. at ¶ 12), Plaintiff claims he was not examined by a doctor until August 28, 2006, three weeks after Defendant Ricci instituted the lockdown and three days before he was taken to the hospital.  In the latter, (id. at 17-18) Plaintiff claims he was examined by Dr. Martin on August 11, 2006 but that he "did not hear from Dr. Martin again."  In both accounts, however, Plaintiff alleges that Dr. Martin could only examine Plaintiff from outside his cell door due to the policy's requirement of confining prisoners to their cells.

made his pain known to the officers in his housing unit, but prison staff informed him that inmates were not to be let out of their cells "for any reason."  (Docket Entry No. 30 at 17-18.)

Finally, on August 31, 2006, Plaintiff states that he "made one last entreaty" to a housing unit officer, who  transmitted an emergency medical response code.  (Id. at 18; Docket Entry No. 1 at ¶ 13.)  According to Plaintiff, medical personnel arrived at Plaintiff's cell and removed him, by wheelchair, to the prison medical clinic, where it was determined that Plaintiff needed to be immediately transferred to the emergency room.  (Docket Entry No. 30 at 18-19; Docket Entry No. 1 at ¶ 13.)  There, Plaintiff was diagnosed with cellulitis, a potentially fatal bacterial infection. (Docket Entry No. 1 at ¶ 14.) Plaintiff was then treated with intravenous antibiotics for a total of six weeks, spending one week at the hospital and ultimately finishing his treatment at the prison infirmary during the following five weeks.  (Id.) Plaintiff states that he continues to suffer from foot pain as a result of contracting cellulitis and the delay in treating it.  (Id. at ¶ 15.)

Plaintiff brings three causes of action under the federal Civil Rights Act, 42 U.S.C. § 1983. Counts One and Four of the complaint, implicating the Eighth Amendment of the U.S. Constitution, state that Defendants' policy constituted (1) deliberate indifference to his serious medical needs and (2) cruel and unusual punishment.  (Id. at ¶¶ 16, 19.)  In Count Three, Plaintiff alleges the policy constituted an atypical and significant hardship in violation of the Fourteenth Amendment of the U.S. Constitution.  (Id. at ¶ 18.)  Plaintiff also alleges in Count Two that Defendants' policy constituted cruel and unusual punishment in violation  of his rights under Article One of the Constitution of the State of New Jersey.  (Id. at ¶ 17.)  Plaintiff seeks both compensatory and punitive damages.  (Id. at ¶ 1.)  The Court's consideration of Defendants' Motions to Dismiss and for Summary Judgment follow.

## II.     DISCUSSION

### A.     Motion to Dismiss

#### 1.     Standard of Review

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds that the plaintiff has failed to set forth fair notice of what the claim is and the grounds upon which it rests. Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955 (2007) (citing Conley v. Gibson, 355 U.S. 41, 47 (1957)). A complaint will survive a motion under Rule 12(b)(6) if it states plausible grounds for plaintiff's entitlement to relief sought. Id. at 1965-66 (abrogating Conley's standard that the "complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief"). In other words, it must contain sufficient factual allegations to raise a right to relief above the speculative level. Id. at 1965. The issue before the Court "is not whether plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence in support of the claims." Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1420 (3d Cir. 1997) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court may consider only the complaint, exhibits attached to the complaint, matters of public record, and undisputedly authentic documents if the complainant's claims are based upon those documents. See Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993), cert. denied, 510 U.S. 1042 (1994).

4

**2.      Defendants' Motion to Dismiss is Granted in Part and Denied in Part**

Defendants raise seven arguments in support of their motion and urge the Court to grant their motion to dismiss. The Court will address each argument in turn.

a.      Whether Plaintiff's Claim should be Dismissed as Premised upon Respondeat Superior

Defendants argue that Plaintiff's claims must be dismissed because Plaintiff grounds his arguments in the impermissible theory of respondeat superior. (Docket Entry No. 22-2 at 8.) If this were in fact the case, the Court would agree that dismissal would be appropriate. It is well established that "[l]ocal government units and supervisors are not liable under Section 1983 solely on a theory of respondeat superior." Hagan v. Rogers, No. 06-4491, 2008 U.S. Dist. LEXIS 39019, at *19 (D.N.J. May 13, 2008) (citing Oklahoma City v. Tuttle, 471 U.S. 808, 824 n.8 (1985)); Monell v. New York City Dept. of Soc. Servs., 436 U.S. 658, 690-91 (1978). "'A defendant in a civil rights action must have personal involvement in the alleged wrongs, liability cannot be predicated solely on the operation of respondeat superior.'" Hagan, 2008 U.S. Dist. LEXIS 39019, at *20 (quoting Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988)). "'Personal involvement can be shown through allegations of personal direction or actual knowledge and acquiescence.'" Hagan, 2008 U.S. Dist. LEXIS 39019, at *20 (quoting Rode, 845 F.2d at 1207); see also Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995).

However, Defendants do not properly characterize Plaintiff's allegations on this issue. Rather than allege that Defendants are vicariously liable as a result of someone else's actions, Plaintiff alleges that Defendants' liability is the result of their own actions, namely, instituting a policy with deliberate indifference to the possibility of leaving Plaintiff without access to medical

care.   (Docket Entry No. 1 at ¶¶10-11; Docket Entry No. 30 at 17.)   Thus, Plaintiff bases his complaint on the permissible theory of supervisor liability, which "may attach if the supervisor implemented deficient policies and was deliberately indifferent to the resulting risk or if the supervisor's actions and inactions were 'the moving force' behind the harm suffered by the plaintiff." Jackson v. Taylor, No. 05-823, 2006 U.S. Dist. LEXIS 57024, at *8 (D. Del. May 12, 2006) (citing Sample v. Diecks, 885 F.2d 1099, 1117-18 (3d Cir. 1989)); see also City of Canton v. Harris, 489 U.S. 378 (1989).   Stoneking v. Bradford Area Sch. Dist., 882 F.2d 720, 724-25 (3d. Cir. 1989) (noting that "[t]his is not respondeat superior in another guise, but an assertion of liability against the individual defendants based on theories recognized in a line of Supreme Court cases.").   Because Plaintiff bases his argument on supervisor liability and not respondeat superior, Defendants' Motion to Dismiss on this point is denied without prejudice.

> b.   Whether Plaintiff's Federal Claims against Defendants in their
>       Official Capacities should be Dismissed

Defendants argue that Plaintiff's federal claims against Defendants in their official capacities must be dismissed because they are barred by federal law.   (Docket Entry No. 22-2 at 11.)   More specifically, Defendants argue that the Eleventh Amendment bars Plaintiff from suing Defendants in their official capacity and that Defendants are not "persons" for purposes of 42 U.S.C. § 1983 when sued, as here, for money damages.   (Id. at 11–14.)   Defendants are correct in their assertions.

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."   U.S. Const. amend XI.   Absent consent by a state, the Eleventh Amendment bars federal court suits for

money damages against state officers in their official capacities. See Kentucky v. Graham, 473 U.S. 159, 169 (1985). Section 1983 does not override a state's Eleventh Amendment immunity. Quern v. Jordan, 440 U.S. 332, 345 (1979).  In addition, neither states, nor governmental entities that are considered arms of the state for Eleventh Amendment purposes, nor state officers sued in their official capacities for money damages are persons within the meaning of Section 1983. Will v. Mich. Dept. of State Police, 491 U.S. 58, 64, 70-71 & n.10 (1989); Grabow v. S. State Corr. Facility, 726 F. Supp. 537, 538-39 (D.N.J. 1989) (holding that the New Jersey Department of Corrections is not a person under § 1983)).

Therefore, because the Eleventh Amendment bars Plaintiff's complaint, and because Defendants are not "persons" under Section 1983, Defendants' Motion to Dismiss Plaintiff's federal claims against Defendants in their official capacities is granted.

> c.     Whether Plaintiff's Allegations that Defendants were Deliberately Indifferent to Plaintiff's Medical Needs should be Dismissed

Defendants next argue that Plaintiff's claim should be dismissed because Defendants were not deliberately indifferent to Plaintiff's medical needs.  (Docket Entry No. 22-2 at 15.)  To support their conclusion, Defendants point to Durmer v. O'Carroll, 991 F.2d 64, 65 (3d Cir. 1993), where the Court affirmed the grant of summary judgment to two of the defendants, a corrections officer and a warden, but overturned the grant of summary judgment to the third defendant, a prison physician. Defendants rely on the Court's finding that "[n]either of these defendants . . . is a physician, and neither can be considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor." Id. at 69; (Docket Entry No. 22-2 at 15).  Defendants also point to the Court's language in Spruill v. Gillis,

372 F.3d 218, 236 (3d Cir. 2004), which relevantly states that "[i]f a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." (Docket Entry No. 22-2 at 16.)  Moreover, Defendants offer records of Plaintiff's medical visits during the period of the lockdown.  (Decl. of Brenda A. Hutton, Docket Entry No. 22-5.)  Taken together, Defendants make the argument that because they are not medical personnel, and because Plaintiff was under the care of medical personnel that Defendants could safely assume would care for Plaintiff, Defendants could not be deliberately indifferent to Plaintiff's medical needs.  (Docket Entry No. 22-2 at 15-17.)

       For purposes of a motion to dismiss, however, the Court takes as true the allegations in Plaintiff's complaint, which does not address the medical visits cited by Defendants.   While Defendants will have the opportunity to raise the records of these visits at a later date, for now, as explained below, Plaintiff's complaint sufficiently alleges a deprivation of his rights that resulted from Defendants' policy.  Taking into account only Plaintiff's complaint, without reference to the records put forth by Defendants, Defendants' arguments on this issue are similar to those made regarding the applicability of respondeat superior liability in that Defendants claim that they are not liable because Plaintiff was under the care of others.  In other words, Defendants argue that they were not deliberately indifferent, but someone else may have been. Once again, however, the Court concludes that the injury alleged by Plaintiff is specific to Defendants in that their alleged actions in instituting a policy resulted in injury; the actions of others who came in contact with Plaintiff, whether doctors, nurses, or prison guards, are not relevant for the purposes of this motion.

       Plaintiff is required to "show that a constitutional deprivation resulted from an official custom or policy or, alternatively, from the actions of an official with 'final authority to establish .

8

. . policy.'" Taylor v. Plousis, 101 F. Supp. 2d 255, 264 (D.N.J. 2000) (citing Pembaur v. City of Cincinnati, 475 U.S. 469, 480-81 (1986)).  For the purposes of surviving a motion to dismiss, Plaintiff must allege that Defendants implemented deficient policies that led to his alleged lack of medical care.  See Lambert v. Blackwell, No. 07-3630, 2008 U.S. Dist. LEXIS 46819, at *12 (D.N.J. June 17, 2008) In Lambert, after consolidating the defendants' motions for dismissal and for summary judgment into one for summary judgment, the Court granted the motion because Plaintiff, a pro se prisoner, failed to allege the relevant defendant's involvement in implementing the allegedly deficient policies.  Id.  On the other hand, in Banegas v. Hampton, No. 08-5348, 2009 U.S. Dist. LEXIS 34882, at *17-19, (E.D. Pa. Apr. 22, 2009), the plaintiff-prisoner succeeded in surviving a motion to dismiss.  There, in addition to discussing the standards for supervisor liability, the court also noted the requirement that complaints "be read in light of the federal courts' liberal notice pleading requirements."  Id. at *13.  In evaluating the plaintiff's complaint, the court found that it was sufficient, "under the standard of review of a motion to dismiss," to state a claim for supervisor liability because it alleged that the defendants' policy not only created a risk of foreseeable harm but also did in fact result in inadequate training for prison officers, which, as a result, contributed to the harm incurred by plaintiff.  Id. at *18-20.

Here, the Court concludes that Plaintiff's complaint, with respect to Count One, is sufficient to survive a motion to dismiss.  In his complaint, Plaintiff does allege that Defendants implemented a policy of confining inmates to their cells, thereby denying Plaintiff access to medical care and depriving him of his constitutional rights.  (Docket Entry No. 1 at ¶ 10; Docket Entry No. 30 at 17-18.)  See Pembaur, 475 U.S. at 480-81.   Also, unlike the plaintiff in Lambert, here Plaintiff does allege Defendants' involvement in implementing a deficient policy, and, as in Banegas, he alleges

9

that there was a risk of foreseeable harm created by Defendants' policy which did in fact lead to his injury.  (See generally Docket Entry Nos. 1, 30.)  Therefore, Defendants' Motion to Dismiss on this point is denied without prejudice.

>    d.    Whether Plaintiff's Allegations that Defendants Subjected him to Cruel and Unusual Punishment should be Dismissed

Defendants' fourth and fifth arguments, that they did not subject Plaintiff to either cruel and unusual punishment or to atypical or significant hardship, respectively, are similar to their arguments that they were not deliberately indifferent to Plaintiff's medical needs.  Each of these arguments essentially rests on Defendants' factual contention that Plaintiff did in fact receive medical treatment during the lockdown.  (Docket Entry No. 22-2 at 18-21.)  Once again, however, the Court concludes that at this early stage and for purposes of a motion to dismiss, the Court must accept the allegations in Plaintiff's complaint as true.

The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care. Estelle v. Gamble, 429 U.S. 97, 103-04 (1976); Rouse v. Plantier, 182 F.3d 192 (3d Cir. 1999). In order to set forth a cognizable claim for a violation of his right to adequate medical care, an inmate must allege: (1) a serious medical need; and (2) behavior on the part of prison officials that constitutes deliberate indifference to that need. Estelle, 429 U.S. at 106; Natale v. Camden County Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003).

To satisfy the first prong of the Estelle inquiry, the inmate must demonstrate that his medical needs are serious. "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" Hudson v. McMillian, 503 U.S. 1, 9 (1992). The Third Circuit has

defined a serious medical need as: (1) "one that has been diagnosed by a physician as requiring treatment;" (2) "one that is so obvious that a lay person would recognize the necessity for a doctor's attention;" or (3) one for which "the denial of treatment would result in the unnecessary and wanton infliction of pain" or "a life-long handicap or permanent loss." Atkinson v. Taylor, 316 F.3d 257, 272-73 (3d Cir. 2003) (internal quotations and citations omitted); see also Monmouth County Corr. Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987), cert. denied, 486 U.S. 1006 (1988). Plaintiff's allegations, taken as true at this time, satisfy this standard. Plaintiff experienced "increasing pain and suffering" as his housing unit officers repeatedly denied him access to medical care because of Defendants' policy. (Docket Entry No. 1 at ¶ 11.) This satisfies the third example of a serious medical need as defined by the Third Circuit. Atkinson 316 F. 3d at 273. Furthermore, Plaintiff's foot pain and swelling were the result of cellulitis, a condition "diagnosed by a physician as requiring treatment" that was allegedly not diagnosed earlier due to Defendants' policy. (Docket Entry No. 1 at ¶ 14; Atkison 316 F. 3d at 267.)

The second element of the Estelle test requires that an inmate show that prison officials acted with deliberate indifference to his serious medical need. See Natale, 318 F.3d at 582 (finding deliberate indifference requires proof that the official knew of and disregarded an excessive risk to inmate health or safety). The Third Circuit has found deliberate indifference where a prison official: (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment for non-medical reasons; or (3) prevents a prisoner from receiving needed or recommended treatment. See Rouse, 182 F.3d at 197; also Monmouth County Corr. Institutional Inmates, 834 F.2d at 346 (stating that "deliberate indifference is demonstrated 'when . . . prison authorities prevent an inmate from receiving recommended treatment for serious medical

11

needs or deny access to [a] physician capable of evaluating the need for such treatment'"); Durmer
v. O'Carroll, 991 F.2d 64 (3d Cir. 1993); White v. Napoleon, 897 F.2d 103 (3d Cir. 1990).

As discussed in the previous section, Defendants' alleged policy of confining inmates to their
cells and denying them access to medical treatment is sufficient to constitute deliberate indifference.
(Docket Entry No. at ¶ 10; Docket Entry No. 30 at 17.)  Such a denial, in fact, is explicitly mentioned
by the Third Circuit as constituting deliberate indifference.  Rouse, 182 F.3d at 197; Monmouth
County Corr. Institutional Inmates, 834 F.2d at 347.  Therefore, Defendants' Motion to Dismiss on
the grounds that, in fact, they did not subject Plaintiff to cruel and unusual punishment is denied
without prejudice.

> e.    Whether Plaintiff's Allegations that Defendants Subjected him to
>        Atypical or Significant Hardship should be Dismissed

Plaintiff's claim under the Fourteenth Amendment mirrors his claims under the Eighth
Amendment.  In sum, the Supreme Court declared that the state has an "obligation to provide
medical care for those whom it is punishing by incarceration."  Estelle v. Gamble, 429 U.S. 97, 103
(1976).  Plaintiff has alleged a deprivation of this right which resulted from the implementation of
Defendants' policy.  (Docket Entry No. at ¶ 10; Docket Entry No. 30 at 17.) Therefore the Court will
deny without prejudice Defendants' Motion to Dismiss in respect to this point.

> f.    Whether Defendants are Entitled to Qualified Immunity because They
>        did not Violate a Clearly Established Constitutional Right

Defendants argue that they did not violate Plaintiff's right to access to medical care, but even
if they had, they "had no reason to believe that their actions violated a clearly established

constitutional right."  (Docket Entry No. 22-2 at 22.)   The Court concludes that the right is clearly

established, and thus Defendants' argument that Plaintiff's claim should be dismissed because

Defendants are entitled to qualified immunity is denied without prejudice.

The Supreme Court has recognized that "what 'clearly established' means . . . depends

largely 'upon the level of generality at which the relevant 'legal rule' is to be established.'"  Wilson

v. Layne, 526 U.S. 603, 615 (1999) (quoting Anderson v. Creighton, 483 U.S. 635, 639 (1987)). In

order to be clearly established, the right must be such that a "reasonable official" would know that

his or her actions violate that right.  Anderson, 483 U.S. at 640.  "This is not to say that an official

action is protected by qualified immunity unless the very action in question has previously been held

unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent."

Id. at 640 (internal citations omitted).

Defendants, in support of their argument for qualified immunity, try to make the "level of

immediate and continual access to medical care to [P]laintiff during a facility-wide lockdown."

(Docket Entry No. 22-2 at 25.)   The right at stake is a broader one, however, as the Supreme Court

has established "the government's obligation to provide medical care for those whom it is punishing

by incarceration."  Estelle v. Gamble, 429 U.S. at 103.  This right is clearly established.  See, e.g.,

id.; Rouse v. Plantier, 182 F.3d 192 (3d Cir. 1999); Ali v. Terhune, 113 Fed. Appx. 431, 435 (3d Cir.

2004).  Thus, Defendants' argument that Plaintiff's claim should be dismissed because Defendants

are entitled to qualified immunity is denied without prejudice.


g.      Whether Plaintiff has Stated a Claim for Relief under New Jersey Law

Defendants argue that Plaintiff cannot state a claim for relief under the New Jersey Civil

13

Rights Act ("NJCRA"), N.J.S.A. § 10:6-1 et seq.  (Docket Entry No. 22-2 at 26.)  While Defendants enter into a discussion of statutory interpretation and pleading standards in their brief, the Court concludes that Plaintiff has not properly plead an injury to begin with in his complaint.  (See Docket Entry No. 1 at ¶¶ 17, 20.)  In his complaint, Plaintiff merely alleges a deprivation of his rights in violation of Article 1, paragraph 12 of the Constitution of the State of New Jersey ("New Jersey Constitution").  (Id.)  Plaintiff fails to mention the NJCRA at all.  Further, there is no private cause of action under the New Jersey Constitution.  While the New Jersey Constitution provides for the rights, which Defendants allegedly violated, the NJCRA provides the remedy for violations of those rights.  See S. Judiciary Comm., Statement to Assembly No. 2073 (N.J. May 6, 2004).  Because Plaintiff has failed to plead any injury under the NJCRA, he cannot state a claim for relief. Therefore, Defendants' Motion to Dismiss Plaintiff's claims under state law is granted; Plaintiff's claim is dismissed without prejudice.  Plaintiff can move to amend his complaint within twenty days of today's date.

### B.    Motion for Summary Judgment

Defendants, in support of their Motion for Summary Judgment, make several arguments and cite to various documents.  They argue that Plaintiff was indeed provided with medical care and that the documentary evidence clearly supports their factual contentions.  (See Docket Entry No. 22-2; Def.'s Statement of Material Facts, Docket Entry No. 22-3.)  Defendants first state that, in general, the ordering of the lockdown did not impact an inmate's access to medical care.  (Docket Entry No. 22-3 at ¶ 5.)  Next, Defendants assert that during Dr. Martin's visit, Plaintiff never mentioned any problems with or pain in his left foot.  (Id. at ¶ 14.)  Further, while Plaintiff certified that his requests

for treatment were repeatedly denied, Defendants point to Plaintiff's health service request forms, which show that Plaintiff did not request treatment for his left foot until August 18, 2006, on which day Nurse Juluander Berry evaluated Plaintiff's foot and indicated that he would refer him to a doctor.  (Id. at ¶¶ 15-18.)  Defendants also maintain that Plaintiff complained about his leg, not his foot, when Social Worker Larry Lukin visited his cell on August 21, 2006, and that Plaintiff told Lukin he wanted to "get out of his cell and walk around."  (Id. at ¶¶ 19-22.)  Defendants argue that Plaintiff has failed to raise a genuine issue of material fact and that therefore, the Court should grant the motion for summary judgment.  (Docket Entry No. 32 at 1.)

In opposition to Defendants' Motion for Summary Judgment, Plaintiff provided a certification, in which he states that "[d]uring the lockdown [D]efendants Ricci and Mee suspended all inmate appointments for primary care at the prison medical clinic and disallowed the normal primary physician care provided at the medical clinic.  Defendants also disallowed all emergency medical passes." (Docket Entry No. 30 at 17.)  Plaintiff then asserts that, after noticing an infection in his foot shortly after Defendants ordered the lockdown, Dr. Martin came to examine his foot but would not open Plaintiff's cell door due to Defendants' orders.  (Id. at 17-18.)  Plaintiff also maintains that, following Dr. Martin's visit, the condition of his foot deteriorated to the point where he feared he would lose his foot.  (Id. at 18.)  Plaintiff certifies that, although the swelling and pain in his foot increased, housing unit officers continually denied him emergency medical passes due to Defendants' orders.  (Id.)  Plaintiff states that it was not until August 31, 2006, when his foot had swollen to twice its normal size, that a housing unit officer transmitted an emergency code to provide medical care for Plaintiff.  (Id.)

15

### 1.      Standard of Review

A party seeking summary judgment must "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Hersh v. Allen Prods. Co. Inc., 789 F.2d 230, 232 (3d Cir. 1986). The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986) (noting that no issue for trial exists unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict in its favor). In deciding whether triable issues of fact exist, the court must view the underlying facts and draw all reasonable inferences in favor of the non-moving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Pa. Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995); Hancock Indus. v. Schaeffer, 811 F.2d 225, 231 (3d Cir. 1987).

### 2.      Defendants' Motion for Summary Judgment is Denied Without Prejudice

Having reviewed the parties' submissions, the Court concludes that Defendants' Motion for Summary Judgment must be denied as there are disputed issues of material fact that remain unresolved. Underlying Plaintiff's arguments for each cause of action is his allegation that he did not receive medical care. (See generally Docket Entry No. 30, Ex. A.) Defendants deny this; they allege that Plaintiff did receive medical care and present records from Plaintiff's medical visits during the lockdown. (See generally Decl. of Brenda A. Hutton; Docket Entry Nos. 22-2, 22-3.) Thus, genuine issues of material fact remain. Summary judgment, therefore, is improper and is

denied without prejudice.

**III.   CONCLUSION**

For the foregoing reasons, the Court grants in part and denies in part Defendants' Motion to Dismiss and denies Defendants' Motion for Summary Judgment without prejudice.  An appropriate form of Order accompanies this Opinion.

Dated: July 9, 2009

    s/ Garrett E. Brown, Jr.
GARRETT E. BROWN, JR., U.S.D.J.
